Charles R. THOMAS, Plaintiff,

v.

Leslie E. WARREN, Alex Thompson, G. Stewart Pallen, Midland Pacific Transport, Ltd., a corporation, and East-West Transport, Ltd., a corporation, Defendants.

Dorothy WYMAN, Administratrix of the Estate of Charles D. Wyman, deceased, Plaintiff,

v.

Leslie E. WARREN, Alex Thompson, G. Stewart Pallen, Midland Pacific Transport, Ltd., a corporation, and East-West Transport, Ltd., a corporation, Defendants.

Civ. Nos. 1904, 1905.

United States District Court
D. Montana,
Havre Division.

May 28, 1958.

Hauge, Hauge & Ober, Havre, Mont., for plaintiff.

Hall, Alexander & Kuenning, Great Falls, Mont., for defendant, East-West Transport, Ltd.

Hoffman & Cure, Great Falls, Mont., for remaining defendants.

JAMESON, District Judge.

Defendant East-West Transport, Ltd. has filed a motion for judgment in accordance with its motion for directed verdict or, in the alternative, for a new trial. In both written brief and oral argument defendant relied primarily upon its contention that this court lacks jurisdiction for the reason that this defendant was not subject to constructive service of process under Section 53–201 to 53–206, inc., R.C.M.1947. Section 53–203 provides in part:

> \* \* \* "The operation by any person, by himself or his agent, of any motor vehicle, whether registered or unregistered, and with or without a license to operate, on any public way in this state, shall be deemed equivalent to an appointment by such person of the secretary of state \* \* \* to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against him, growing out of an accident or collision in which he or his agent may be involved while operating a motor vehicle on any public way in this state, and such operation shall be a signification of an agreement by such person that any such process against him which is served upon the secretary of state of his successor in office shall be of the same force and validity as if served upon him personally. \* \* \*"

It is the contention of defendant East-West that the driver of the motor vehicle involved in this accident was not an agent of this defendant within the meaning of this statute.

The plaintiff in Civil Action 1904, Charles R. Thomas, and Charles D. Wyman, who filed Civil Action 1905 and subsequently died, were injured on September 30, 1954 on U. S. Highway No. 2,

near Hingham, Montana, when a truck owned and operated by Thomas, in which Warren was riding as a passenger, was struck by a truck and tractor owned by the defendant Lester E. Warren and being driven by the defendant Alex Thompson. Thompson was hired and paid by Warren.

The defendant G. Stewart Pallen was a common carrier, and the truck-tractor was registered in his name as a public service vehicle with the Motor Carrier Board of the Province of Manitoba, Canada, under license plate P.S.V. 229, and was also registered in his name with the Registrar of Motor Vehicles of the State of Montana. At the time of the accident, the truck carried license plates bearing the number P.S.V. 229. The defendant East-West was also a common carrier authorized to transport freight and merchandise both in the Dominion of Canada and the State of Montana. The defendant Warren did not hold any certificate authorizing him to operate as a common carrier.

Warren was transporting freight which had been accepted by East-West Transport as a carrier for hire, under an arrangement whereby Warren received a percentage of the freight charges collected by East-West. There were received in evidence, over objection of East-West, several bills of lading issued by East-West covering freight so transported. There was also received in evidence, over objection of defendant, a manifest (required under U. S. Customs Laws) delivered to the U. S. Customs Officer at Blaine, Washington, in which East-West was described as the carrier handling the goods and which was signed "East-West Transport Ltd., by L. E. Warren, Agent". Warren was also transporting other freight, but none for any of the defendants except East-West.

At the time of the accident, Warren was proceeding from Vancouver to Winnipeg. He had also hauled freight for East-West on the same basis on the trip from Winnipeg to Vancouver. There was evidence that representatives of East-West had directed loading and unloading at both Vancouver and Winnipeg, and that following the accident East-West sent a check to Warren at Dunseith, North Dakota. It did not appear, however, whether this check represented a portion of the freight charges due Warren from East-West or was to defray expenses incurred as a result of the accident. Warren himself was not present at the trial and the representative of East-West at Vancouver did not testify. Both could probably have resolved some of the uncertainty in the testimony with respect to the relationship between Warren and East-West.

The jury was instructed that, "A common carrier who is the holder of a certificate of franchise from a public regulatory body for the purpose of transporting freight on the public highways may not delegate its responsibilities and duties arising out of the use of such franchise, and the franchise holder is therefore responsible for the conduct of those whom it permits to act under its franchise, even though such persons be independent contractors."

With particular reference to the defendant East-West, the jury was further instructed that if it found that "the defendant East-West Transport, Ltd. was transporting freight and merchandise for others for hire in the truck and trailer involved in this accident, it is no defense to East-West Transport, Ltd. that Warren was operating under an agreement of independent contract with East-West Transport, Ltd., and if Warren were liable for plaintiff's injuries, East-West Transport, Ltd. would also be liable, regardless of whether Warren was an agent, servant, employee, or independent contractor."

The jury returned verdicts in favor of the plaintiffs against all of the defendants. The only motion for judgment notwithstanding the verdict was filed on behalf of East-West. The question for determination is whether Warren and Thompson were agents of East-West within the meaning of Section 53—

203, supra. I find no cases precisely in point, and none have been cited by counsel. It is accordingly necessary to consider general rules and analogous situations which may be helpful in determining whether East-West was subject to constructive service under this statute.

The statute providing for constructive service on non-resident owners and operators was construed by the Montana Supreme Court in State ex rel. Gallagher v. District Court, 1941, 112 Mont. 253, 114 P.2d 1047, 1051, where the court held that, "The statute depends entirely, not upon ownership, but upon 'the operation by any person, by himself or his agent', of the motor vehicle." The court continued: "The ownership by the driver rather than by the defendants might have some bearing upon the question of the driver's agency for them, but even that would not necessarily be conclusive, since they might make another their agent for the driving of a car belonging to a third person or even to the agent. But that question does not appear here, since at the time of the accident the car was apparently not being operated by Wilson, the conditional sale purchaser, but by one of the five men who were traveling with him pursuant to the arrangement made by Gallagher."

In holding against defendants' contention that the statutes should be strictly construed, the court said:

"* * * They urge that the statute is in derogation of the common law and thus is to be strictly construed, citing several decisions from other jurisdictions in support of the contention. But that argument cannot be applicable in Montana, for Section 4, Revised Codes, provides: 'The rule of the common law that statutes in derogation thereof are to be strictly construed has no ap-

plication to the codes or other statutes of the state of Montana. The codes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice.'

"It seems clear to us that the object of the act is to further the safety of highway traffic within the state and afford a practicable remedy for damage arising from negligence on the highways, by providing for service of summons within the state where it would otherwise be impossible, or virtually so." 114 P.2d at page 1052, 1053.[1]

Defendant relies upon the case of Fuller v. Lindenbaum, 1938, 29 Cal.App.2d 227, 84 P.2d 155, 158 where the California court construed a statute substantially the same as that in Montana. On a motion to quash service of summons, the court considered the issue of "agency" presented by affidavits. It held that the operator of the motor vehicle, a commission salesman, was an independent contractor and that the nonresident defendant could not be held liable for his negligence. The court continued: "For the foregoing reasons, there was no basis for the service of summons upon the respondent corporation under the terms" of the statute providing for constructive service. In other words, the court's holding that the statute was not applicable was based primarily upon the fact that the independent contractor would not be liable. This basis does not exist in the instant case. On the contrary, the defendant is liable by reason of its nondelegable duty, even though the actual operator may have been an independent contractor. This does not mean that

---

1. The purpose of the statute providing for constructive service on nonresident owners and operators was considered in more detail in State ex rel. Charette v. District Court, 1939, 107 Mont. 489, 86 P.2d 750.

Those statutes which do not include the words "or his agent", and particularly in states where such statutes are strictly construed, are not in point. See statement of rule relative to persons subject to constructive service in 61 C.J.S. Motor Vehicles, § 502d, p. 156 ff.

liability and process are necessarily identical. I agree with counsel for defendant that the questions are distinct and that there might be a substantive cause of action, with immunity to process. Covert v. Hastings Mfg. Co., D.C.Neb. 1942, 44 F.Supp. 773. It is significant, however, that in the one case cited in support of defendant's position, the nonapplicability of the statute was predicated upon nonliability.

■ It is well settled that franchised common carriers may not delegate their duties to independent contractors so as to escape liability for their negligent performance. The rule is well stated in the Restatement of Torts, Sec. 428: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." The basis of the rule was explained in Venuto v. Robinson, 3 Cir., 1941, 118 F.2d 679, certiorari denied C. A. Ross, Agent, Inc., v. Venuto, 314 U.S. 627, 62 S.Ct. 58, 86 L.Ed. 504, as follows: "The basis of his claim is the common law responsibility of one person for the negligent acts of another. The most common instance of such liability is that of a master for torts of a servant committed in the scope and course of employment. But that is not the only instance, even at common law. Similar liability for acts of an independent contractor in some situations has long been the rule, and the scope of this doctrine has been steadily widened in recent years. While there is no master and servant relationship here, there is vicarious liability for acts of an independent contractor; the same result on a somewhat different theory, but each a product of that system of growth by judicial decision which we call the common law." 118 F.2d at page 683.[2] It is clear from the evidence that Thompson was not a servant or employee of East-West. An independent contractor, however, may be an agent for certain purposes. The Restatement of the Law of Agency makes clear the difference between an agent who is a servant and an agent who is not a servant, but is an independent contractor. The following excerpts are quoted from the Restatement: "(b) The word 'servant' is used in contrast with 'independent contractor', a term which includes all persons who contract to do something for another and who are not servants with respect thereto. An agent who is not a servant is, therefore, an independent contractor when he contracts to act on account of the principal. * * *" Sec. 2(b) p. 12.

"(c) Independent Contractors. It is important to distinguish between a servant and an agent who is not a servant, since ordinarily a principal is not liable for the incidental acts of negligence in the performance of duties committed by an agent who is not a servant. * * *" Sec. 220(c) p. 485. See also, Commonwealth v. Minds Coal Mining Corporation, 1948, 360 Pa. 7, 60 A.2d 14.

■ While ordinarily a principal is not liable for the negligent acts of an independent contractor, in this case East-West, as stated above, is liable by reason of its nondelegable duty as a franchise carrier.

Moreover, "one may be an independent contractor and at the same time for certain purposes be an agent of the employer. An independent contractor becomes an agent by his employer agreeing to be responsible for obligations incurred by him in the completion of his undertaking * * *". 2 C.J.S. Agency § 2d, p. 1029. The foregoing was quoted with approval in Carruth v. Valley Ready-Mix Concrete Co., Tex.Civ.App.1949, 221 S.W. 2d 584. See also Arkansas Independent Oil Marketers Ass'n v. Monsanto Chemical Co., 1955, 225 Ark. 620, 284 S.W.2d 127.

---

2. See also: Hodges v. Johnson, D.C.W.D. Va.1943, 52 F.Supp. 488; Werner Transp. Co. v. Dealer's Transport Co., D.C.Minn.1951, 102 F.Supp. 670, and cases there cited; Eli v. Murphy, 1952, 39 Cal.2d 598, 248 P.2d 756.

While here there was no express contractual obligation on the part of East-West, in operating as a common carrier on the highways of Montana, (1) it assumed a nondelegable duty of liability for Warren and Thompson's negligence, even though they may be independent contractors; and (2) it specifically agreed that any operation by its agent would permit constructive service of process. In my opinion, under the liberal rule followed in State ex rel. Gallagher v. District Court, supra, and the statements of the Montana Supreme Court relative to the purpose of the statute, Warren and Thompson were "agents" of East-West in this operation within the meaning of Sec. 53–203 supra.

Motion denied.