[No. B069314. Second Dist., Div. Two. Oct. 19, 1993.]

ARACELI GAMBOA et al., Plaintiffs and Appellants, v.
CONTI TRUCKING, INC., et al., Defendants and Respondents.

## COUNSEL

Gutierrez & Gutierrez, Jesse J. Banuelos and Oscar H. Gutierrez for Plaintiffs and Appellants.

Liebman, Reiner & McNeil, Liebman, Reiner, McNeil & Walsh, Joseph R. Zamora, Kevin H. Louth, McIntosh, Schmidt & Long and Eldred O. Arthur for Defendants and Respondents.

## OPINION

**FUKUTO, J.**—Roberto Gamboa was killed when he was struck, while riding his bicycle, by a tractor-trailer owned by the Fred Alberg Trucking Company (Alberg Trucking) and driven by its employee, Leland Ray Demele. At the time of the accident, Alberg Trucking was subhauling freight for Conti Trucking, Inc. (Conti Trucking). Appellants, Araceli Gamboa (Roberto Gamboa's widow) and her three minor daughters, brought a wrongful death action against respondents Alberg Trucking, Fred Alberg as an individual, Leland Ray Demele and Conti Trucking.

Summary judgment was granted in favor of Conti Trucking and against appellants on the ground that Conti Trucking was not liable for the acts of Alberg Trucking.[1] Appellants filed this appeal after their motion for reconsideration was denied.

The controlling facts are not in dispute. Conti Trucking was licensed by the Public Utilities Commission as a highway common carrier. At the time of the accident, Conti Trucking had entered into a subhauler agreement with Alberg Trucking. Alberg Trucking was an independent contractor under the subhauler agreement. Alberg Trucking held a Public Utilities Commission

---

[1] Appellants reached a settlement with Alberg Trucking, Fred Alberg, and Demele for Alberg Trucking's policy limits of $250,000. The trial court found this settlement to be in good faith over Conti Trucking's opposition.

permit to operate as a highway contract carrier.[2] Prior to entering into the subhauler agreement, Conti Trucking verified that Alberg Trucking had liability insurance of $250,000, the minimum amount required by Public Utilities Commission regulations.

█ Appellant contends that Conti Trucking, as a highway common carrier, could not delegate its duties to an independent contractor so as to escape liability for the independent contractor's negligence.

The nondelegable duty doctrine as to highway carriers was first stated in California by our Supreme Court in *Eli* v. *Murphy* (1952) 39 Cal.2d 598 [248 P.2d 756]. The court there stated:

"C.M.T. contends that under the terms of its contract with Leo J. Murphy, the latter was an independent contractor, and that it is therefore not liable for the negligence of Murphy's employee. Plaintiffs, on the other hand, contend that under both the common law and certain regulations of the Public Utilities Commission, C.M.T., as a highway common carrier, could not delegate its duties to an independent contractor so as to escape liability for their negligent performance.

---

[2]"There are basically three types of operating authority required by California law (Pub. Util. Code, § 3501 et seq.): (1) highway common carrier; (2) radial highway common carrier; and (3) highway contract carrier. A highway *common carrier* is a public utility engaged in the transportation of property on the highways and is regulated as a public utility; a highway common carrier dedicates his facility to the public and ordinarily operates between fixed termini or over regular routes; a highway common carrier is required to obtain a certificate of public convenience and necessity from the Public Utilities Commission. (Pub. Util Code, §§ 213, 215, 3513.) A *radial* highway *common carrier* engages in the transportation of property on the highways, but is not regulated as a public utility; a radial highway common carrier does not operate between fixed termini or over regular routes; he establishes his own rates until rates are fixed by the Commission; he is required to secure a permit, not a certificate of public convenience and necessity; the essential difference between a common carrier and a radial common carrier is that the latter carrier does not operate between fixed termini or over regular routes. (*Alves* v. *Public Utilities Com.*, 41 Cal.2d 344, 350 [260 P.2d 785]; Publ Util. Code, § 3516.) A highway *contract carrier* engages in the transportation of property on the highways but does not dedicate his facilities to the public; he transports goods and materials from one or more selected shippers under a special contract; he is required to secure a permit as distinguished from a certificate of public convenience and necessity; until fixed by the Commission, he establishes his own rates; thus, a highway contract carrier means every carrier other than a highway common carrier, a radial highway common carrier and certain petroleum carriers. (Pub. Util. Code, § 3517; *Alves* v. *Public Utilities Com., supra.*)" (*Atchison, Topeka & Santa Fe R.R. Co.* v. *Flintkote Co.* (1967) 256 Cal.App.2d 764, 771-772 [64 Cal.Rptr. 675], original italics, fn. omitted.)

"The common law principle upon which plaintiffs rely has been enunciated in section 428 of the Restatement of Torts,[3] and has frequently been applied to impose liability upon franchised common carriers who have engaged independent contractors to transport goods over the public highways. (*Venuto* v. *Robinson*, 118 F.2d 679, 682-683; *War Emergency Co-op. Ass'n* v. *Widenhouse*, 169 F.2d 403, 406-407; *Cotton* v. *Ship-By-Truck Co.*, 337 Mo. 270 [85 S.W.2d 80, 84]; see, also, *Brown* v. *L. H. Bottoms Truck Lines, Inc.*, 227 N.C. 229 [42 S.E.2d 71, 76]; *Costello* v. *Smith*, 179 F.2d 715, 717; anno., 16 A.L.R.2d 960, 961, note 2; Restatement in the Courts, Torts, § 428.) We have concluded that it is applicable here.

"C.M.T., operating as a highway common carrier, is engaged in a 'business attended with very considerable risk' (*Venuto* v. *Robinson, supra*; *Barry* v. *Keeler*, 322 Mass. 114 [76 N.E.2d 158, 164]; *Hodges* v. *Johnson*, 52 F.Supp. 488, 490), and the Legislature has subjected it and similar carriers to the full regulatory power of the Public Utilities Commission to protect the safety of the general public. (Pub. Util. Code, §§ 213, 761, 762, 768, 1062.) The effectiveness of safety regulations is necessarily impaired if a carrier conducts its business by engaging independent contractors over whom it exercises no control. If by the same device it could escape liability for the negligent conduct of its contractors, not only would the incentive for careful supervision of its business be reduced, but members of the public who are injured would be deprived of the financial responsibility of those who had been granted the privilege of conducting their business over the public highways. Accordingly, both to protect the public from financially irresponsible contractors, and to strengthen safety regulations, it is necessary to treat the carrier's duties as nondelegable. (*Liberty Highway Co.*, v. *Callahan*, 24 Ohio App. 374 [157 N.E. 708, 711]; *Stickel* v. *Erie Motor Freight, Inc.*, 54 Ohio App. 74 [6 N.E.2d 15,17]; see, also, *Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594, 604-605 [110 P.2d 1044], and cases cited.)" (*Eli* v. *Murphy, supra*, 39 Cal.2d at pp. 599-600.)

Conti Trucking contends that to the extent of any nondelegable duty imposed by *Eli* v. *Murphy*, Conti Trucking's vicarious liability was extinguished pursuant to *Klein* v. *Leatherman* (1969) 270 Cal.App.2d 792 [76 Cal.Rptr. 190].

*Klein* v. *Leatherman* involved a personal injury action arising out of a multivehicle collision. At the time of the accident, California State Shippers,

---

[3]" 'An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity. [Quote from original footnote.]' "

whose employee negligently caused the injury, and whose Public Utilities Commission permit to operate as a contract carrier had been revoked and insurance had been cancelled, was subhauling goods for Leatherman, a contract carrier.[4] The trial court refused to find Leatherman vicariously liable for California State Shippers' negligence. The Court of Appeal reversed holding that Leatherman's duties of care were nondelegable even though he was a contract carrier and not a highway common carrier.

Conti Trucking relies on the following dicta in *Klein* v. *Leatherman, supra*: "A highway contract carrier engaging another as a subhauler thus is under a practical compulsion to verify that the subhauler possesses an unrevoked permit and the required insurance coverage. This is in the public interest, as well as his own. If the subhauler has complied, the monetary liability under the nondelegable duty may be eliminated, or diminished, pro tanto. If the subhauler has not complied, it is presumed that an arrangement for subhauling will not be made in the first place. If such an arrangement is made, both he who violates the law and one who procures it are penally liable. (Pub. Util. Code, § 3801.)" (270 Cal.App.2d at p. 796.) Conti Trucking contends that if the primary carrier meets its obligation to ensure that the independent contractor carrier is licensed to haul freight on California highways and has the required amount of liability insurance, it has satisfied its nondelegable duty under *Eli* v. *Murphy* and any vicarious liability is extinguished.

The quoted excerpt Conti Trucking relies upon is not the holding of the case but is dicta. The holding of *Klein* v. *Leatherman, supra*, is an expansion of the nondelegable duty doctrine. The Court of Appeal recognized that one

---

[4]In *Eli* v. *Murphy, supra*, 39 Cal.2d 598, the Supreme Court distinguished the case of *Gaskill* v. *Calaveras Cement Co.* (1951) 102 Cal.App.2d 120 [226 P.2d 633], which found no nondelegable duty under section 428 of the Restatement of Torts as to a contract carrier, stating: "In that case, however, both the defendant and the independent contractor stood on an equal footing as contract carriers operating under permits from the Public Utilities Commission. Such carriers are not required to secure certificates of public convenience and necessity and they are not subject to the safety regulations the commission may establish for highway common carriers. They are entitled to permits as a matter of right on complying with the statutory provisions. (Pub. Util. Code, § 3572.) Thus the carriers in that case were engaged in a business open to all, and accordingly, the principle enunciated in section 428 of the Restatement of Torts was inapplicable." (*Eli* v. *Murphy, supra*, 39 Cal.2d at p. 600.)

Conti Trucking contends that it was a highway contract carrier as well as a highway common carrier and that fact brings this case within the rule of *Gaskill* v. *Calaveras Cement Co., supra*, 102 Cal.App.2d 120, of no nondelegable duty. We do not agree. The controlling fact is that Conti Trucking is a highway common carrier franchised by the Public Utilities Commission. This distinguishes this case from *Gaskill* v. *Calaveras Cement Co.* Conti Trucking and Alberg Trucking did not stand on equal footing with the Public Utilities Commission as did the defendant and independent contractor in *Gaskill* v. *Calaveras Cement Co.*

truck on the highway tends to be like any other and "[i]t is difficult to discern wherein classification of the operation on the highway as a privilege under franchise, or as a right under a permit, changes the degree of protection required." (270 Cal.App.2d at p. 795.) *Klein* v. *Leatherman* appears to be the first and only reported opinion in California applying the rule of section 428 of the Restatement of Torts to a nonfranchised highway contract carrier.

The quoted language relied upon by Conti Trucking does not state that the nondelegable duty is eliminated. It states that the ". . . *monetary liability* under the nondelegable duty *may* be eliminated, or diminished, pro tanto." (*Klein* v. *Leatherman, supra,* 270 Cal.App.2d at p. 796, italics added.) This, of course, would follow since any amount a plaintiff may recover from a vicariously liable highway common carrier would be reduced by any payment made by or on behalf of the primary tortfeasor and eliminated completely if the insurance coverage is sufficient to cover the damages sustained. Any amount paid by one joint tortfeasor operates to reduce pro tanto the amount of damages that a plaintiff may recover against other joint tortfeasors. (Code Civ. Proc., § 877; *Steele* v. *Hash* (1963) 212 Cal.App.2d 1 [27 Cal.Rptr. 853].) However, the nondelegable duty of care would not be affected.

The judgment is reversed. Appellants shall recover costs on appeal.

Gates, Acting P. J., and Nott, J., concurred.

A petition for a rehearing was denied November 15, 1993, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 12, 1994.